**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

| | |
|---|---|
| DAMON QUARLES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   NO. 3:13-CV-843 |
| | ) |
| MARK SEVIER, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter is before the Court on Defendant Kochensparger's Motion for Summary Judgment, filed by defendant Jason Kochensparger on July 27, 2015 (DE #94). For the reasons set forth below, the motion is **GRANTED**. The claim against defendant Jason Kochensparger is **DISMISSED WITH PREJUDICE**. The claim against defendant Danny Oaks **REMAINS PENDING**.

BACKGROUND

Damon Quarles ("Plaintiff"), a *pro se* prisoner, filed this action in Miami County Superior Court on June 17, 2013, against Mark Sevier, superintendent of the facility where he was housed ("Superintendent Sevier"), Jason Kochensparger and Danny Oaks, correctional officers at that facility (respectively, "Sgt. Kochensparger" and "Sgt. Oaks"), and Sherry Townsend and Doree Yocum, both licenced practical nurses at the facility

(respectively, "Nurse Townsend" and "Nurse Yokum"). (DE #1.) The defendants timely removed the action to this court on August 16, 2013. (DE #2.) Plaintiff alleges that the correctional officers failed to protect him from attack by another inmate. According to the complaint and attachments, beginning in October 2012, Plaintiff and his cellmate, Paul Trice ("Trice"), began to have serious problems getting along. Plaintiff claims that Trice was an "angry man" who was "mad at the world." He further claims that Trice had a higher security classification than him, and he did not feel they should be housed together.

On or about October 11, 2012, the two men got into an argument over some minor issue and Trice punched Plaintiff in the face. That same day, Plaintiff told Sgt. Kochensparger and Sgt. Oaks several times that either he or Trice needed to be moved, and that they "could not be in that room together." He claims the officers were also aware of the fight that had occurred. Nevertheless, he was told that since it was a Friday, he would have to wait until Monday to get a new cell assignment, and that there was nothing they could do unless "someone got hurt."

That evening, Plaintiff was returning to his cell after his prison work assignment, when Trice and two of his "Vice Lord" friends allegedly "jumped" Plaintiff, hitting him repeatedly in the head with a makeshift weapon consisting of a padlock inside a sock. As a result, Plaintiff suffered considerable pain and

received ten to fourteen stitches to close a head wound. He also claims to suffer ongoing pain, blurry vision, and lack of feeling on one side of his face due to the attack.

In addition to Sgt. Kochensparger and Sgt. Oak, Plaintiff sued Nurse Yocum and Nurse Townsend, claiming that they failed to provide him with proper medical care after the attack. He claims they treated his injuries as merely a superficial wound instead of taking him to a hospital for outside treatment for his head injury. He claims that the prison doctor told him after these events that the nurses should have sent him for outside treatment given the serious nature of his injuries. He alleges that because his injury was not properly treated, he is suffering permanent damage from the attack.

On August 27, 2013, this Court screened the complaint pursuant to 28 U.S.C. § 1915A, and granted Plaintiff leave to proceed against Sgt. Kochensparger and Sgt. Oaks in their individual capacities for monetary damages for failing to protect him from an attack by another inmate, granted Plaintiff leave to proceed against Nurse Townsend and Nurse Yocum in their individual capacities for monetary damages for failing to provide him with adequate medical care following the attack, dismissed Superintendent Sevier as a defendant, and dismissed any and all other claims contained in the complaint. (DE #9.) The defendants were ordered to respond to the remaining claims.

(*Id.*)  Subsequently, two of the defendants, Nurse Townsend and Nurse Yocum, moved for summary judgment on the ground that Plaintiff did not properly exhaust his administrative remedies as to the claims raised against them.  (DE #24.)  On April 14, 2014, this Court granted the motion for summary judgment, and the claims against Nurse Townsend and Nurse Yocum were dismissed without prejudice pursuant to 42 U.S.C. § 1997e(a).  (DE #31.)  The Court noted that the claims against Sgt. Kochensparger and Sgt. Oaks remained pending.  (*Id.*)

On July 8, 2014, one month after a scheduling order was set by the Court and four months prior to the expiration of the original discovery deadline in this case, Plaintiff filed a *pro se* Verified Motion for Summary Judgment.  (DE #41.)  On December 17, 2014, attorneys Christopher C. Myers, Ilene M. Smith, and Rachel Janel Guin-Lowry entered their appearances on behalf of Plaintiff.  (DEs #76 & #77 & #80.)  Because Plaintiff was no longer proceeding *pro se*, the Court struck Plaintiff's *pro se* motion for summary judgment and indicated that his attorneys could refile the motion (or a revised motion) at any time prior to the expiration of the dispositive motion deadline should they so choose.  (DE #81.)  They did not do so.  Instead, on July 27, 2015, Sgt. Kochensparger filed the instant motion for summary judgment, arguing that he is entitled to judgment as a matter of law.  (DE #94.)  After several requests for an extension of time,

Plaintiff filed his response on October 21, 2015. (DE #105.) Sgt. Kochensparger filed his reply on November 12, 2015. (DE #113.) Thus, the motion is ripe for adjudication.

DISCUSSION

Standard

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. To determine whether a genuine dispute of material fact exists, the Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. See *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). However, "a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs

for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (citations omitted).

A party opposing a properly supported summary judgment motion may not rely on allegations in his own pleading but rather must "marshal and present the court with the evidence [he] contends will prove [his] case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009) (citation omitted). If the non-moving party fails to establish the existence of an essential element on which he bears the burden of proof at trial, summary judgment is proper. See *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

Facts

During the events in question, Plaintiff, an inmate at Miami Correctional Facility ("MCF"), was being housed in the C-Housing Unit in the same cell as Trice. (DE #94-4, pp. 3, 5.) According to the department of corrections offender information system, Trice was described as a Vice Lord with an "assault history." (DEs #107 & 108.) At that time, Sgt. Kochensparger was employed by MCF as a Correctional Sergeant who was assigned to the C-Housing Unit. (DE #94-1, p. 1.) The job description for a Correctional Sergeant notes that he/she is "responsible for

following post orders, maintaining order, supervising and controlling offenders and their activities. Incumbent works on an assigned shift in a specific unit/or post under general supervision of a correctional lieutenant."[1] (DE #105-2, p. 1.)

On the morning of October 13, 2012, Plaintiff and Trice argued several times before informing Sgt. Kochensparger that they were "not getting along" and wished to separated. (DE #94-1, p. 1; see also DE #94-2, p. 9; DE #105-3, p. 1.) Sgt. Kochensparger called the acting shift supervisor, Lt. Reagle, to inform him of the situation, and Lt. Reagle instructed Sgt. Kochensparger to tell Plaintiff and Trice that a bed move was not warranted without additional information as to why such a move was necessary. (DE #105-3, p. 1.) Later, Plaintiff and Trice approached Sgt. Kochensparger again to ask for a bed move, this time indicating that if they were not moved, they were going to physically fight. (*Id.*; see also DE #94-1, p. 1-2; DE #94-2, p. 9.) Although admittedly "in charge" of the inmates in the C-Housing Unit that morning, according to Sgt. Kochensparger, he

---

[1] Plaintiff points out that the document specifies that a Correctional Sergeant must be "[a]ble to remain awake and alert for up to 16 hours at a time and monitor offenders for signs of disorder, aggression or tension. Must be alert and responsive to his surroundings; be able to make critical decisions quickly; and must be able to select the most appropriate guidelines or procedures to follow in a variety of situations. . . . Must have keen observation and hearing skills in order to ensure the safety and security of the facility. . . . The incumbent is responsible for the management, supervision, and safety of the facility, offenders, co-workers and general public. He/she is directly accountable for knowing the location and status of an offender . . . [and] must remain vigilant to all breaches of security and threats." (DE #105-2, p. 2.) The job description also notes that "[t]he incumbent reports directly to a lieutenant." (*Id.*)

himself is not authorized to grant bed moves. (DE #94-1, p. 1; DE #105-1, p. 1.) If a bed move is requested by an offender on a weekend, the normal policy/practice is to forward the request to the acting shift supervisor. (DE #94-1, p. 1.) Thus, because October 13, 2012, was a Saturday, Sgt. Kochensparger states that he called Lt. Reagle again to inform him that Plaintiff and Trice were requesting a bed move and that, if they did not get moved, a fight was imminent. (*Id*. at 1-2; DE #105-3, p. 1.) Sgt. Kochensparger documented this interaction into the daily log. (*Id*. at 2-4.) The daily log states that Plaintiff and Trice:

> [a]lmost went to throwing punches this morning. Lt. Reagle was called and informed that both ofd's approached me and stated that if they did not get a bed move then they would be fighting when ofd Quarles returned from work. Both ofd's were informed to speak to the councelor (sic) on Monday.

(*Id*. at 3-4.) Upon the completion of his shift, Sgt. Kochensparger personally advised the incoming personnel about the requests and statements of Plaintiff and Trice. (DE #105-3, p. 2.)

Trice attacked Plaintiff with a "lock in a sock" on the evening of October 13, 2012, causing Plaintiff injuries to his head and face; however, Sgt. Kochensparger was not on duty or physically present in the C-Housing Unit at MCF when the incident occurred. (*Id*. at 2; DE #94-2, p. 9; DE #105-4, pp. 1-2.)

-8-

Eighth Amendment - Failure to Protect

Under the Eighth Amendment, correctional officials have a constitutional duty to protect inmates "from violence at the hand of other inmates." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). However, as the Seventh Circuit has observed: "[P]risons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." *Id*. Therefore, a failure to protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). Instead, "liability of a prison official for failure to protect an inmate only materializes if the 'official knows of and disregards an excessive risk to inmate health or safety.'" *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). To establish a valid failure to protect claim, a plaintiff must show that the harm he was subjected to was objectively serious and that the prison official had actual knowledge of the risk, "specifically, he 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference.'" *Id*. (quoting *Farmer*, 511 U.S. at 837). A correctional officer will be held liable if deliberate indifference to a prisoner's welfare "effectively condones the

-9-

attack by allowing it to happen." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010). As noted by the Seventh Circuit:

> Proving deliberate indifference, however, requires more than a showing of negligent or even grossly negligent behavior. Rather, the corrections officer must have acted with the equivalent of criminal recklessness. Indeed, an officer who actually knew of a substantial risk to a detainee's safety is free from liability if he responded reasonably to the risk, even if the harm ultimately was not averted, because in that case it cannot be said that he was deliberately indifferent. The test of deliberate indifference ensures that the mere failure of the prison official to choose the best course of action does not amount to a constitutional violation.

*Borello v. Allison*, 446 F.3d 742, 747-48 (7th Cir. 2006) (internal quotation marks, brackets, and citations omitted).

For purposes of this motion only, Sgt. Kochensparger concedes the first prong of the analysis (i.e. that he was aware of a substantial risk of harm to Plaintiff) and argues instead that, even if he did know of such a risk, it is undisputed that he was not deliberately indifferent to Plaintiff's needs. Sgt. Kochensparger points out that, rather than ignore the risk to Plaintiff as is alleged, he took concrete steps reasonable to that risk. Specifically, once he was approached by Plaintiff and Trice with the fact that they wanted a bed move or would resort to physical violence, he immediately notified Lt. Reagle, the acting shift supervisor, of the situation and summarized the interaction and subsequent reporting in his daily log. He also

-10-

personally informed the incoming personnel about the incident at the end of his shift. Sgt. Kochensparger argues that these steps were reasonable in light of the fact that he had no authority to grant bed moves, and because he followed the usual practice with regard to reporting weekend bed moves to the acting shift supervisor.

The Court agrees with Sgt. Kochensparger that, under the circumstances described, his actions were not deliberately indifferent. Although Plaintiff asserts that Sgt. Kochensparger "took no reasonable steps to prevent the attack," the undisputed evidence suggests otherwise. Per usual MCF practice, Sgt. Kochensparger notified his direct supervisor of the problem, including the threats of imminent physical violence, and he advised the incoming staff of the same at the end of his shift. Plaintiff argues that a "reasonable attempt to prevent the attack would have involved some tangible option of separating the two offenders," but Sgt. Kochensparger did not have the authority to authorize a bed move. Plaintiff points generally to the job description of a Correctional Sergeant as proof that Sgt. Kochensparger's actions were deliberately indifferent because the description provides that he "himself was responsible for the management, supervision, and safety of the offenders in the cell house." However, that same document notes that a Correctional Sergeant works under "general supervision of a correctional

lieutenant" and "reports directly to a lieutenant." Sgt. Kochensparger's affidavit testimony that he did not have the authority to authorize the move remains undisputed. And, as such, his immediate reporting of the incident to the shift supervisor who *did* have the authority to effectuate the move was reasonable. That Lt. Reagle did not act upon the information supplied by Sgt. Kochensparger in time to prevent the attack from occurring does not create a genuine dispute that Sgt. Kochensparger's own actions were deliberately indifferent. See *Borello*, 446 F.3d at 747 (even an officer who "actually knew of a substantial risk to a detainee's safety is free from liability" as long as he "responded reasonably to the risk" despite harm occurring anyway).

The *Gevas* case, upon which Plaintiff relies, is distinguishable from matter at hand. In *Gevas*, the plaintiff testified that he had alerted three prison officials to the fact that his cell mate had threatened him months before he actually was stabbed by his cell mate with a pen. *Gevas*, 798 F.3d at 478. The Plaintiff testified that "none of the three officials responded to the concerns he had raised" and that he was told he would be summoned to the "internal affairs office for a follow-up discussion, but that did not occur either." *Id*. The court held that the plaintiff had provided sufficient evidence that the defendants knew he was in danger of being harmed by his cell

mate. *Id*. at 481-82. Even so, the defendants argued that they were not deliberately indifferent to his needs because seven weeks earlier one of the defendants had advised the plaintiff of a "means of separating himself from [his cell mate]" (namely that the plaintiff could refuse his assignment in order to trigger a transfer into segregation). *Id*. However, the court dismissed that argument as unpersuasive, noting that the defendants did not affirmatively act to protect the plaintiff from harm but rather left it up to the plaintiff himself to exercise that option as a last resort. *Id*. at 483. Furthermore, the court determined that choice to be unreasonable because "a prisoner is not obligated to commit a disciplinary infraction in pursuit of his own safety." *Id*.

Here, as noted above, the evidence presented establishes that Sgt. Kochensparger took a reasonable affirmative step in response to Plaintiff's request by contacting Lt. Reagle. Sgt. Kochensparger did not ignore the threat of violence as the defendants in *Gevas* were have alleged to have done, nor did he foist an undesirable and unreasonable choice upon Plaintiff that would have placed the burden of ensuring his safety squarely on Plaintiff's own shoulders. Rather, he immediately contacted his supervisor who had the authority to effectuate a bed move, and he advised all incoming personnel of the situation that had been communicated by Trice and Plaintiff before his shift ended.

While Plaintiff argues that Sgt. Kochensparger should have done something different to prevent the assault, the failure to choose the best course of action does not subject him to liability for a constitutional violation. See *Borello*, 446 F.3d at 748.

Qualified Immunity

Qualified immunity shields officials from civil liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quotation omitted). The plaintiff carries the burden of defeating a defendant's claim of qualified immunity. *Molina ex rel. Molina v. Cooper,* 325 F.3d 963, 968 (7th Cir. 2003). "Whether a government official is entitled to qualified immunity is a legal question for resolution by the court, not a jury." *Purtell v. Mason*, 527 F.3d 615, 621 (7th Cir. 2008) (citation omitted).

In determining whether an official is entitled to qualified immunity, a court must ask two questions: "(1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Burton v. Downey*, 805 F.3d 776, 784 (7th Cir. 2015) (quoting *Williams v. City of Chicago*, 733 F.3d 749,

758 (7th Cir. 2013)). A court has discretion to decide which of the two prongs of the qualified immunity analysis to address first. *Pearson*, 555 U.S. at 236.

Regarding the second prong, a clearly established right "must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards,* 132 S. Ct. 2088, 2093 (2012) (internal quotation marks, alteration, and citation omitted). Courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question *beyond debate*." *Ashcroft v. al–Kidd,* 131 S. Ct. 2074, 2083 (2011) (emphasis added, citations omitted). The United States Supreme Court has repeatedly instructed courts:

> "not to define clearly established law at a high level of generality." *al–Kidd,* [563 U.S.] at 742, 131 S. Ct. 2074. The dispositive question is "whether the violative nature of *particular* conduct is clearly established." *Ibid.* (emphasis added). This inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen,* 543 U.S. 194, 198, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004) (*per curiam*) [(citation omitted)].

*Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (emphasis in original). A plaintiff "can demonstrate that the right was clearly established by presenting a closely analogous case that establishes that the [defendant's] conduct was unconstitutional

-15-

or by presenting evidence that the [defendant's] conduct was so patently violative of the constitutional right that reasonable officials would know without guidance from a court." *Estate of Escobedo v. Bender*, 600 F.3d 770, 780 (7th Cir. 2010) (citations omitted). The court is directed to look to controlling precedent from the Supreme Court and the Seventh Circuit, and, in the absence of controlling precedent, cases from other circuits "to ascertain whether there was such a clear trend in the case law that the recognition of the right by a controlling precedent was merely a matter of time." *Id.* at 782.

Here, Sgt. Kochensparger argues that he is entitled to qualified immunity because, even though the Seventh Circuit has found violations of the Eighth Amendment for a failure to protect in certain circumstances when a prison official wholly ignored an inmate's request to be separated from his cell mate, the Seventh Circuit has found defendants to be entitled to qualified immunity in other circumstances when some form of immediate action was taken yet later proven to have been insufficient to protect an inmate. See e.g *Haley v. Gross*, 86 F.3d 630, 642 (7th Cir. 1996) (deliberate indifference found where prison officer ignored as many as seven complaints by an inmate about his ongoing feud with his cell mate and his cell mate's intimidating behavior and never checked in on the cell mates); *Borello*, 446 F.3d at 749 (defendants entitled to qualified immunity where some action,

albeit ultimately ineffective, was taken to prevent violence because, while defendants may have acted negligently by not moving the plaintiff to another cell, their actions did not "effectively condone" the attack).  Sgt. Kochensparger argues that this case is similar to *Borello* in that he took reasonable although ultimately ineffective steps to respond to the threat of danger.  Although Plaintiff argues that there is "no evidence – NONE – that [Sgt.] Kochensparger took an affirmative 'concrete step' to prevent the very inmate assault of which he had been warned and about which he had actual knowledge," the Court notes it is undisputed that Sgt. Kochensparger immediately reported the request/incident to the acting shift supervisor, Lt. Reagle, who possessed the sole authority to authorize a bed move on a weekend, and he also advised incoming personnel of the situation.  This was a reasonable response in light of the fact that Sgt. Kochensparger was not authorized to grant the move himself.  He did not completely ignore Plaintiff's pleas as is alleged, which is in contrast to those cases where the Seventh Circuit did find violations for a failure to protect.  Thus, because Plaintiff has not shown that his constitutional rights were violated, Sgt. Kochensparger is entitled to qualified immunity.

Additionally, even assuming *arguendo* that sufficient facts exist to establish a constitutional violation, Plaintiff has not shown that the right was clearly established at the time of the

attack. As noted above, "it is insufficient for a plaintiff simply to point to a recognized constitutional right and claim that the right has been violated." *Borello*, 446 F.3d at 750. Plaintiff has not pointed to any factually similar cases (wherein a correctional officer without authority to grant a cell transfer followed department practice of immediately reporting such request to a supervisor and advising him of the specific threat that was issued) nor have they persuasively argued that the violation was so obvious that Sgt. Kochensparger should have been on notice that his actions would be construed as deliberately indifferent. As such, Sgt. Kochensparger is entitled to qualified immunity.

CONCLUSION

For the reasons set forth above, Defendant Kochensparger's Motion for Summary Judgment, filed by defendant Jason Kochensparger on July 27, 2015 (DE #94), is **GRANTED**. The claim against defendant Jason Kochensparger is **DISMISSED WITH PREJUDICE**. The claim against defendant Danny Oaks **REMAINS PENDING**.

**DATED: March 30, 2016**          /s/ Rudy Lozano, Judge
                                   **United States District Court**